**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MOHAMEDOU OULD SALAHI,** ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **Civil Action No. 05-0569 (RCL)** |
| ) | |
| **BARACK H. OBAMA,** *et al.*, ) | |
| Respondents. ) | |

<u>**MEMORANDUM OPINION**</u>

This case comes before the Court on petitioner's Motion [453] for an Order to Show Cause

as to why an Order should not issue requiring the Department of Defense ("DOD") to (1) promptly

provide petitioner a hearing before a Periodic Review Board; (2) cease interfering with petitioner's

access to this habeas Court; and (3) cease imposing arbitrary and severe restrictions on petitioner's

conditions of confinement.

Upon consideration of petitioner's Motion, respondents' response and petitioner's reply

thereto, the arguments made in open court on November 24, 2015, the entire record in this case,

and the applicable law, the petitioner's Motion is DENIED for the reasons provided below.

**I.     BACKGROUND**

Petitioner has been detained without charge since November 2001. *Salahi v. Obama*, 710

F. Supp. 2d 1, 3 (D.D.C. 1010), *vacated and remanded*, 625 F.3d 745 (D.C. Cir. 2010). The

United States government moved him to Guantanamo Bay Naval Base in 2002, where he

remains to this day. *Salahi*, 710 F. Supp. 2d at 3. In 2005 he filed a habeas petition, *id.*, which

this Court, Judge Robertson presiding, granted in 2010. *Id.* at 16. The government appealed,

and the D.C. Circuit vacated that decision and remanded for review in the light of decisions such

as *Awad v. Obama*, 608 F.3d 1 (D.C. Cir. 2010), *Bensaya v. Obama*, 610 F.3d 718 (D.C. Cir.

1

2010), and *Al-Adahi v. Obama*, 613 F.3d 1102 (D.C. Cir. 2010). *Salahi v. Obama*, 625 F.3d 745, 752–53 (D.C. Cir. 2010).

In March 2011, the President created an interagency administrative process "to review on a periodic basis" whether continued detention of certain Guantanamo detainees was "necessary to protect against a significant threat to the security of the United States." Executive Order 13567, 76 Fed. Reg. 13277. Each detainee is to get a full hearing every three years from the Periodic Review Board ("PRB")—an entity DOD created for this purpose—plus a review of his file for new information every six months, which may lead to a recommendation for a full PRB hearing, even if such a hearing would fall before the triennial one. *See* Deputy Secretary of Defense, Directive-Type Memorandum (DTM) 12-005 (May 9, 2012). Respondents have yet to inform petitioner of the date of his PRB hearing.

## II.   JURISDICTION

Congress withdrew jurisdiction from the federal courts over habeas and non-habeas claims filed by or on behalf of, among others, Guantanamo detainees. *See* 22 U.S.C. § 2241(e). In *Boumediene v. Bush*, the Supreme Court struck down § 2241(e)(1)'s withdrawal of habeas jurisdiction as an unconstitutional suspension of the writ. 553 U.S. 723, 733 (2008). The D.C. Circuit subsequently clarified that § 2241(e)(2) remains in force, which means "actions other than habeas" are still unavailable to detainees. *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 319 (D.C. Cir. 2012). The first question presented in this case is therefore whether or not petitioner's claim that the government must fix a date for his PRB hearing sounds in habeas.

Petitioner argues that *INS v. St. Cyr*—which dealt with habeas, though in the context of immigration—controls this case. *See* 533 U.S. 289 (2001). In *St. Cyr*, the habeas petitioner (St. Cyr) was an alien who had been admitted to the United States as a lawful permanent resident but

had rendered himself deportable by pleading guilty to selling a controlled substance. *Id.* at 293. St. Cyr brought a habeas petition arguing that the Attorney General of the United States had discretion to waive deportation under the law in effect at the time of his conviction. *Id.* The Attorney General, however, interpreted the statutes in effect at the time of St. Cyr's removal as divesting him of such discretion. *Id.* The parties in *St. Cyr* also disputed the threshold issue of jurisdiction. The government argued that the Antiterrorism and Effective Death Penalty Act of 1996, § 401(e), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 8 U.S.C. §§ 1252(a)(1), (a)(2)(C), and (b)(9), barred habeas jurisdiction over "the question of law presented by" St. Cyr's petition. 533 U.S. at 298. But the Court declined to so read those statutes, in part because the government's interpretation would raise a serious question as to whether the jurisdictional statutes at issue violated the Suspension Clause, "even assuming that the Suspension Clause protects only the writ as it existed in 1789." *Id.* at 304–05.

In doing so, the Court rejected the government's argument that common law habeas (i.e. what the Court assumed was the minimum guaranteed by the Suspension Clause) would have been unavailable where "an official had statutory authorization to detain the individual . . . but . . . the official was not properly exercising his discretionary power to determine whether the individual should be released." *Id.* at 303 (citations omitted) (internal quotation marks omitted). Though the *St. Cyr* Court took care to note that "courts recognized a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand," *id.* at 307, it pointed out that "[h]abeas courts . . . regularly answered questions of law that arose in the context of discretionary relief." *Id.* at 307–08 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), and *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77 (1957)).

The Court also observed, however, that it had "held that a deportable alien had a right to challenge the Executive's failure to exercise the discretion authorized by the law" where "[e]ligibility that was 'governed by specific statutory standards' provided 'a right to a ruling on an applicant's eligibility.'" 533 U.S. at 307–08 (quoting *Jay v. Boyd,* 351 U.S. 345, 353–54 (1956)). Here, unlike *St. Cyr*, petitioner points to no statute conferring a right to periodic review of the threat he poses. The only statute that might have—The Authorization for the Use of Military Force, Pub. L. No. 107–40 § 2(a), 115 Stat. 224 (2002)—does not. *See Hamdi v. Rumsfeld,* 542 U.S. 507, 521 (2004) ("The United States may detain, for the duration of these hostilities, individuals legitimately determined to be Taliban combatants who 'engaged in an armed conflict against the United States.'"). And petitioner's ostensible right to the PRB process cannot be grounded in the Executive Order which created it. *Compare Meyer v. Bush,* 981 F.2d 1288, 1297 n.7 (D.C. Cir. 1993) ("An Executive Order devoted solely to the internal management of the executive branch—and one which does not create any private rights—is not, for instance, subject to judicial review."), *with* Executive Order 13567 ("This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."). As the D.C. Circuit noted in *Omar v. McHugh*, detainees should be wary of reading *St. Cyr* too broadly; "*St. Cyr* did not concern extradition or military transfers, but rather addressed removal of aliens under the immigration laws," and it "protected and enforced what [the Court] determined to be the historical scope of the writ." 646 F.3d 13, 23 n.10 (D.C. Cir. 2011). *St. Cyr* determined that petitioner's claim—that he was eligible for discretionary relief from removal—was one a common-law judge with the power to issue a writ of habeas corpus could have answered in 1789. *See id.* Here, by contrast, even if we ignore the distinction between a

4

statute which creates rights and an Executive Order which does not, what respondents dispute is not petitioner's eligibility for PRB consideration, but rather whether he may obtain an order compelling the government to fix a date for that consideration.

Respondents argue that petitioner's claim does not sound in habeas and is therefore barred because the relief he seeks (a hearing which would allow the government to exercise its discretion to release him) would only possibly result in his release. Though respondents have not attempted to distinguish *St. Cyr*, they offer cases more recent than *St. Cyr* supporting their proposition. In *Skinner v. Switzer*, for example, the Supreme Court considered whether a prisoner who had filed a civil rights claim under 42 U.S.C. § 1983 seeking DNA testing of crime-scene evidence was barred from doing so by a doctrine which requires certain claims attacking confinement be brought via habeas. *See* 562 U.S. 521, 524 (2011). The *Skinner* Court decided that the petitioner's claim need not have been brought via habeas because it would not "necessarily imply" the wrongness of his conviction. *Id.* at 534 (quoting *Wilkinson v. Dotson*, 544 U.S. 74 (2005)). Most importantly for our purposes, *Skinner* also noted that the petitioner "has found no case, nor has the dissent, in which the Court has recognized habeas as the sole remedy, or even an available one, where the relief sought would 'neither terminat[e] custody, accelerat[e] the future date of release from custody, nor reduc[e] the level of custody,'" 562 U.S. at 534 (quoting *Dotson*, 544 U.S. at 86 (Scalia, J., concurring)), and that "*Dotson* declared . . . that when a prisoner's claim would not 'necessarily spell speedier release,' that claim does not lie at 'the core of habeas corpus,' and may be brought, if at all, under § 1983." 562 U.S. at 535 (citation omitted).

The D.C. Circuit followed suit in *Davis v. U.S. Sentencing Comm'n*. 716 F.3d 660 (D.C. Cir. 2013). In *Davis*, a prisoner whose convictions involved powder and crack cocaine brought an Equal Protection challenge against the U.S. Sentencing Commission's decision to reduce the

sentencing disparities between the two, because that the reduction did not apply to offenses that, like his, involved 15 kg or more of crack cocaine. *Id.* at 662. The prisoner sought relief under, among other things, the Declaratory Judgment Act, 28 U.S.C. §2201(a), but the district court denied relief on that basis because it concluded that it lacked "jurisdiction to entertain an action for a declaratory judgment when, as here, an adequate remedy is available by petitioning the sentencing court for a writ of habeas corpus." *Davis*, 812 F. Supp. 2d at 2. On appeal, the D.C. Circuit decided that *Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371 (D.C. Cir. 2000)—which held that "a federal prisoner must still bring his claim in habeas even when success on the merits 'would have a merely probabilistic impact on the duration of custody,'" *id.* at 373—must be recognized as overturned in light of, among other things, *Skinner*. *Davis*, 16 F.3d at 665–6 ("'[P]robabilistic' claims may not even lie within the bounds of habeas, much less at its core. If habeas is not even 'proper' for claims with only a probabilistic impact on custody, . . . it could not be the case that Congress intended that prisoners asserting such claims should be limited to habeas.").

In rebutting this, petitioner relies on *Aamer v. Obama*, in which the D.C. Circuit recognized statutory habeas jurisdiction over claims challenging certain conditions of confinement, namely, the practice of force-feeding Guantanamo detainees engaged in a hunger strike. *See* 742 F.3d 1023, 1026 (D.C. Cir. 2014). Petitioner argues that *Aamer* demonstrates that habeas jurisdiction "encompasses any challenge where a 'petitioner contends that some aspect of his confinement has deprived him of a right to which he is entitled while in custody.'" Pet'r's Mot. 8, ECF No. 453 (quoting *Aamer*, 742 F.3d at 1036). He also argues that this Court should disregard habeas-channeling cases like *Skinner* and *Davis* because they "turn[] on whether [a] claim for relief is at the 'core of habeas'" and do not describe the full scope of statutory habeas jurisdiction. Pet'r's Reply Supp. Mot. 5, ECF No. 472. The Court disagrees with both arguments. First, while *Aamer*

6

does show that claims not relating to release may sound in habeas, it does not show that "probabilistic" or "discretionary" claims relating to release do so. Second, *Skinner* and *Davis* clearly do make statements about the scope of statutory habeas in general, namely, "Switzer has found no case, nor has the dissent, in which the Court has recognized habeas as the sole remedy, or even an available one, where the relief sought would 'neither terminat[e] custody, accelerat[e] the future date of release from custody, nor reduc[e] the level of custody,'" *Skinner*, 562 U.S. at 534 (citation omitted), and "'probabilistic' claims may not even lie within the bounds of habeas, much less at its core," *Davis*, 716 F.3d at 665. Finally, the fact that *Skinner* and *Davis* seem to except probabilistic claims from the category of habeas—and did not consider *St. Cyr* controlling contrary authority—fatally undermines petitioner's assertion that *Aamer* held that habeas encompasses literally any claim that some aspect of executive detention violates the law.

For the aforementioned reasons, the Court concludes that it lacks jurisdiction to hear petitioner's claim.

## III.    PETITIONER'S LEGAL MATERIALS

Petitioner alleges that he has been deprived of access to his legal materials. Specifically, petitioner says that Guantanamo staff confiscated all of his legal papers in October 2014. Decl. of Nancy Hollander, Esq. ¶ 19. According to petitioner's counsel, as of their last in-person visit with petitioner in April 2015, petitioner still lacks access to "many" of those materials, and though respondents' counsel informed petitioner's counsel on May 4, 2015 that petitioner had access to all of his legal materials, petitioner's counsel has not yet been able to confirm that representation. *Id.* Petitioner's counsel requested the return of those of petitioner's legal materials which were removed from his cell in October 2014, and requested the removal from his cell of legal materials that had been marked as unfit to leave with petitioner. Decl. of Nancy Moreno, Esq. ¶¶ 9–10. At

the hearing on this motion, counsel for the petitioner represented that petitioner, while reviewing his legal materials in September 2015, discovered a piece of paper in one of his privileged legal material binders that appeared to be a government form for chain of custody.  As a result of this, petitioner fears that some of his privileged communications with counsel have been exposed to the government, and mistrusts respondents' status report on his legal materials.  Lastly, petitioner says respondents have failed to return handwritten notes he had taken while reviewing his legal materials.  It is unclear whether these notes comprise, are identical to, or are merely a part of petitioner's handwritten notes from his 2009 merits hearing, which petitioner's counsel likewise indicated had not been returned.

Respondents represent that (1) petitioner was allowed to see all of his legal materials on September 17, 2015; (2) petitioner may keep a certain amount of legal materials in his cell, may ask to review any of his other legal materials, and may swap out the bin of legal materials stored in his cell for other materials stored outside his cell; and (3) guards and staff judge advocates have not reviewed the contents of petitioner's legal materials.  Respondents also say they do not know where petitioner's handwritten notes are, and that while they may be missing, petitioner may simply have overlooked them when he reviewed his legal materials on September 17.

Based on this record, the Court is largely satisfied that petitioner has adequate access to his legal materials.  Other than his handwritten notes, petitioner has identified no legal materials that appear even potentially inaccessible.  Furthermore, to the extent petitioner is asking the Court to order respondents to find petitioner's handwritten notes, the Court is reluctant to do so until further efforts by petitioner (such as a bin-by-bin search) prove fruitless, as ordering respondents to conduct that search would seem to require breaching the very attorney-client privilege petitioner rightly cherishes.  Nor will the Court order respondents to remove from petitioner's cell materials

marked as inappropriate to leave with petitioner, as petitioner has identified no right that would entitle him to such an order.

With respect to the privileged binder that contained what appeared to petitioner to be a chain-of-custody form, the Court is not convinced that this incident is evidence of a breach of his attorney-client privilege. The most likely explanation would seem to be that the document was inserted in the course of a contraband inspection, perhaps as a marker that the binder had been searched. The Court would also not be surprised to learn that Guantanamo staff use careful chain-of-custody practices when handling detainee legal materials, especially when those materials are being regularly handled and moved as a result of either (a) a change in detainee housing, or (b) swapping legal material bins in and out of a detainee's cell. The document petitioner saw in his privileged material may have been inserted blindly by a guard who was ordered to keep the chain of custody form with the material to which it pertained; or petitioner may have misunderstood what he saw. Of course, this is all mere supposition by the Court, but because respondents deny that either the guard force or the staff judge advocates are reviewing petitioner's legal materials—the Court assumes this was meant to deny that any government personnel are conducting substantive review, and not to artfully omit the possibility that non-guards and non-judge-advocates are doing so—and because petitioner has not submitted the chain of custody form for the Court's review, the Court lacks sufficient grounds to act on petitioner's allegation.

Finally, petitioner's counsel also expressed dissatisfaction with the inconsistency between the legal material policies in Exhibits A and B to Respondents' Status Report Regarding Petitioner's Legal Materials—specifically, the rules about the maximum number of legal material bins a detainee may have (unlimited, according to Andrew Warden's email; four, according to Col. David Heath's declaration). These inconsistencies may simply be due to some change in the legal

material storage policies at Guantanamo that occurred between February 6, 2014 (the date of Warden's email) and June 24, 2014 (the date on which Col. Heath assumed his current position of responsibility at Guantanamo). As petitioner's counsel noted, however, four 15-quart bins would not appear to be sufficient to hold all of petitioner's legal materials, and at the hearing, respondents' counsel indeed seemed to contradict Col. Heath's declaration by stating that petitioner had nine such bins of legal materials. The Court will therefore, in a separate ORDER, instruct respondents to file with the Court an explanation of the above-noted inconsistencies between (1) respondents' counsel's statements at the November 24, 2015 hearing in this case, (2) Col. Heath's declaration, and (3) Andrew Warden's email.

## IV. PETITIONER'S OTHER CONDITIONS OF CONFINEMENT CLAIMS

Petitioner alleges that respondents have violated his rights by depriving him of access to several personal possessions he had previously been allowed to keep in his cell, namely, his computer, books, family photographs, and gifts from prison guards. As respondents note, however, in order to prevail on such a claim petitioner must first identify what constitutional right the challenged restrictions offend, *see Turner v. Safley*, 842 U.S. 78, 89 (1987), and petitioner's only proffered source for such a right, the Due Process Clause of the Fifth Amendment, does not apply to Guantanamo detainees. *See Kiyemba v. Obama*, 555 F.3d 1022, 1026 (D.C. Cir. 2009) ("Decisions of the Supreme Court and of this court—decisions the district court did not acknowledge—hold that the Due Process Clause does not apply to aliens without property or presence in the sovereign territory of the United States.") (footnote omitted), *vacated and remanded*, 559 U.S. 131 (2010) (per curiam), *reinstated*, 605 F.3d 1046 (D.C. Cir. 2010). Petitioner observes that *Aamer* assumed without deciding "that the constitutional right to be free from unwanted medical treatment extends to nonresident aliens detained at Guantanamo," 742

10

F.3d at 1039, and argues that the *Aamer* court would only have done so if it disagreed with what petitioner calls respondents' "overbroad reading of *Kiyemba* as categorically and conclusively foreclosing due process rights at Guantanamo." Pet'r's Reply Supp. Mot. 20, ECF No. 472. Their argument is irrelevant; whether or not the *Aamer* panel had reservations about *Kiyemba*, they did not overrule it. *See Aamer*, 742 F.3d 1023; *see also Bldg. & Constr. Trades Dep't, AFL–CIO v. Allbaugh*, 295 F.3d 28, 34 n.1 (D.C. Cir. 2002) (stating that a "panel [of the Court] is bound to abide by . . . precedent unless it is overturned by the court sitting en banc or by the Supreme Court"). The Court therefore cannot provide petitioner with his requested relief.

**CONCLUSION**

For the foregoing reasons, petitioner's Motion [453] is DENIED. A separate ORDER consistent with this Memorandum Opinion shall issue this date, December 17, 2015.

ROYCE C. LAMBERTH
United States District Judge

11